NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| LEWIS, et al, | : | |
| Plaintiffs, | : | CIVIL NO. 02-383 (SRC) |
| v. | : | Hon. Stanley R. Chesler, U.S.D.J. |
| UNITED STATES OF AMERICA, et al, | : | **OPINION** |
| Defendants. | : | |

**CHESLER**, District Judge

THIS MATTER comes before the Court on the motion of Defendant United States for Summary Judgment against Plaintiffs Michael McMunn and John Taylor. Defendant BEI separately moves for summary judgment against Plaintiffs Michael McMunn and John Taylor. For the reasons stated below, Defendants' motions will be **GRANTED**.

## I. BACKGROUND

This case[1] arises out of an explosion that occurred on September 29, 2000, at Reade Manufacturing ("Reade"). Russell C. Kluge, Sr. ("Mr. Kluge") was an employee of Reade and was ultimately killed by the explosion. Plaintiffs Michael McMunn ("Mr. McMunn") and John Taylor ("Mr. Taylor") were also employed by Reade and were working at the time of the

---

[1] By an Order dated November 19, 2002, this Court consolidated Lewis et al. v. United States et al., Kluge v. United States et al., and McMunn v. United States et al. By an Order dated January 22, 2003, this Court further consolidated Taylor v. United States, et al. By an Order dated July 28, 2003, this Court further consolidated American Home Insurance v. United States.

1

explosion. Both McMunn and Taylor have filed suit against Defendants alleging that they suffered severe emotional distress as a result of the explosion.

**A.     Plaintiff Michael McMunn**

Plaintiff McMunn was employed as a shipping and receiving worker on the day of the explosion. That morning, while doing an inventory check, McMunn noticed that barrels containing powdered magnesium appeared to be "clumpy." (Aff. of McMunn, Ex. A ¶ 2.) McMunn brought a sample of the suspect material to his supervisor and was instructed to put the material in a milling device known as a "crusher" which is used to reduce large pieces of metal into smaller pieces. McMunn dumped the material into a bin and broke it down with a rubber mallet and raked it with a steel rake. (Id. ¶¶ 3-4.) Mr. Kluge was responsible for driving a "Bobcat" vehicle which is used to scoop material. McMunn left the material for Mr. Kluge to process in the "crusher."

After leaving the material with Mr. Kluge, McMunn went to the blender room which is approximately 80 to 100 feet from the "crusher." (Dep. Of Michael McMunn ("McMunn Dep") at 56:3-59:21, July 8, 2005.) While in the blender room, McMunn heard an explosion and was able to determine that the explosion came from the "crusher" area. (Id. at 60:12-14; 62:5-8.) McMunn rushed over to the "crusher" site and witnessed "Mr. Kluge amongst a pile of debris burning." (Aff. Of McMunn, ¶ 6.) McMunn noticed that Mr. Kluge still had flames on his person and attempted to extinguish the flames by throwing his coveralls on top of Mr. Kluge. (McMunn Dep. at 1-13:64; 19:64-4:65.)   Soon thereafter an ambulance arrived and took Mr. Kluge to the hospital. (Id. at 72:4-7.) The next day, Plaintiff John Taylor contacted McMunn and informed him that Mr. Kluge died about 24 hours after the incident. (Id. at 74:4-9.)

### B.     Plaintiff John Taylor

Plaintiff John Taylor was also employed by Reade on September 29, 2000.  Prior to the accident, Taylor was "working with barrels of Alloy and Magnesium" and he "assisted Russel Klug [sic] by cutting nylon bags of secondary Magnesium, which he believes were later put into the bin that Russell Klug [sic] was using on the day of the accident."  (Dep. of John Taylor ("Taylor Dep") 14:24-19:3, July 8, 2005; Alford Decl., Ex. C, p. 2.)  At the time of the explosion, Taylor was not in a position to see what happened because his view was obstructed.  After hearing the explosion, Taylor discovered Mr. Kluge under several pieces of sheet metal.  Mr. Taylor took the sheet metal off Mr. Kluge and noticed that "everything was burned off him." (Taylor Dep. 23:16-21.)  Mr. Taylor, along with Mr. Kluge's brother, began patting down Mr. Kluge in an attempt to put out the fire.  (Id. at 25:1-3.)  Mr. Taylor then took out his knife and cut off Mr. Kluge's collar which was still burning and removed Mr. Kluge's wallet, which was also on fire.  (Id. at 25:4-9.)  Taylor and Mr. Kluge's brother extinguished all the flames on Mr. Kluge and then waited for paramedics to arrive.  (Id. at 71:17-72:4.)

## II.   DISCUSSION

On or about January 13, 2006, Defendant United States filed its motion for summary judgment against both Plaintiff McMunn and Plaintiff Taylor's claims.  On the same day Defendant BEI filed two separate motions for summary judgment; one as to Plaintiff Taylor's claims and the other as to Plaintiff McMunn's claims.  Defendant United States argues they are entitled to judgment as a matter of law because neither Plaintiff can establish the requisite elements for their claims of negligent infliction of emotional distress.  Defendant BEI makes the

same argument[2] and therefore both motions will be discussed together below.

**A.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not

---

[2]In BEI's motion for summary judgment as to Plaintiff's Taylor, BEI makes the additional argument that Taylor's claims are barred by the relevant two year statute of limitations. (BEI Br. 19.)

match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

**B.      Defendants' Motions for Summary Judgment**

McMunn and Taylor allege that as a result of the negligence of both the United States and BEI they suffered emotional distress because they were caused to witness the pain and suffering of Mr. Kluge.  (Taylor Second Am. Compl. ¶ 16-17; McMunn Second Am. Compl. ¶ 11.) Defendants move for summary judgment on the ground that Plaintiffs cannot establish the requisite elements to sustain their claim under established New Jersey law.

The tort of negligent infliction of emotional distress has evolved and expanded through the years under New Jersey law.  To ensure the genuineness of these claims, for many years New Jersey required these types of emotional distress claims to be accompanied with physical impact. Ward v. West Jersey & Seashore R.R. Co., 65 N.J.L. 383, 47 A. 561 (N.J. Sup. 1900).   The requirement that physical impact must accompany emotional distress for recovery of damages was abandoned in Falzone v. Busch, 45 N.J. 559 (1965).  The New Jersey Supreme Court held in Falzone that a plaintiff could recover damages for "substantial bodily injury or sickness" which resulted from a "reasonable fear of immediate personal injury," even though the plaintiff had not been subjected to any actual physical impact.  45 N.J. at 569.

In Portee v. Jaffee, the New Jersey Supreme Court further expanded recovery for emotional distress by adopting the bystander liability doctrine.  84 N.J. 88 (1980).  In Portee, plaintiff suffered severe emotional distress after having witnessed her young child become trapped in an elevator shaft and ultimately die while still trapped.  Id. at 91-92.  The court allowed plaintiff to bring a negligence action for emotional distress even though the mother had

5

not been exposed to any danger or fear of physical injury. Id. at 101-02. The court adopted a four factor test to determine when emotional distress damages are recoverable by a bystander. The test requires a plaintiff to prove the following elements:

> (1) the death or serious physical injury of another caused by defendants negligence; (2) a marital or intimate familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.

Id. at 101. The Portee court stated that the second prong, having a "marital or intimate familial relationship," was the most crucial because "[i]t is the presence of deep, intimate, familial ties between the plaintiff and the physically inured person that makes the harm to emotional tranquility so serious and compelling." Id. at 98.

The prongs of the Portee test have been applied narrowly by New Jersey courts. See e.g., Carey v. Lovett, 132 N.J. 44, 62 (1993) (holding that a father seeking to recover as bystander for medical malpractice resulting in his sons death "must contemporaneously observe the malpractice and its effects on the victim"); Johnson v. Mountainside Hosp., 239 N.J. Super. 312, 327 (App. Div. 1990) ("a bystander may not recover damages for emotional distress unless he has been present and has observed the actual injury inflicted on a member of his family"); Frame v. Kothari, 115 N.J. 638, 649 ("[t]he injury must be one that is susceptible to immediate sensory perception, and the plaintiff must witness the victim when the injury is inflicted or immediately thereafter"); but see Ortiz v. John D. Pittenger Builder, Inc., 382 N.J. Super 552 (Law Div. 2004) (holding that actual observation by a bystander of the accident producing injury or death of another is not required if there is otherwise an experiential perception of it).

The "marital or intimate, familial relationship" requirement as recognized in Portee is still

a prerequisite for bystander liability in New Jersey.  Since Portee, the New Jersey Supreme Court has only slightly expanded the scope of relationships sufficient for recovery of emotional distress damages.   For example, in Dunphy v. Gregor, the New Jersey Supreme Court allowed plaintiff, to go forward on her bystander claim because she was engaged to the victim.  136 N.J. 99, 115 (1994).  The court noted that it is the "quality of the relationship [which] creates the severity of the loss."  Id. at 111.

The court found that examining the quality of the relationship would preserve the necessary distinction "that must be made between ordinary emotional injuries that would be experienced by friends and relatives in general and those 'indelibly stunning' emotional injuries suffered by one whose relationship with the victim 'at the time of the injury , is deep, lasting and genuinely intimate."  Id. at 109-110 (quoting Denphy v. Gregor, 261 N.J. Super 110, 123 (N.J. Super. A.D., 1992)).  Determining whether a plaintiff possess a close relationship with the victim must be done in accordance with specific standards allowing a factfinder to assess the degree of intimacy.  The court stated that the standard "must take into account the duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, [and] the extent and quality of shared experience."  Id. at 112.

Here, Defendants argue that neither Plaintiff had the type of intimate, familial relationship with Mr. Kluge sufficient to meet the requirements for bystander liability under Portee.  (Def. Br. 15.)  It is clear that both Plaintiff Taylor and Plaintiff McMunn had developed a strong friendship with Mr. Kluge while working together at Reade.  Plaintiff McMunn worked with Mr. Kluge for 18 years and would occasionally go for drinks outside of work at a local bar.  (Dep. of McMunn 74:20-75:14.)  Plaintiff Taylor was friends with Mr. Kluge for 20 years and a

coworker for approximately 18 years. (Dep. of Taylor 72:12-25.) Taylor drove Mr. Kluge to work, and ate lunch with him almost every day. (Id.) Taylor and Mr. Kluge would also occasionally socialize on the weekends. (Id.) However, neither Plaintiff had any financial dealings with Mr. Kluge nor had they ever lived in the same home. Plaintiff McMunn, in fact, had never been to Mr. Kluge's home. (McMunn Dep. 76:8-12.) Plaintiff McMunn and Plaintiff Taylor have failed to satisfy the "marital or intimate, familial relationship" prong under Portee. The friendships between Plaintiffs and Mr. Kluge do not rise to the level of a deep intimate familial relationship and to allow recovery for Plaintiffs in this case would require an extension of Portee.

Alternatively, Plaintiffs argue they are entitled to relief under a "rescuer" theory of liability as set forth in Eyrich v. Dam, 193 N.J. Super. 244 (N.J. Super App. Div. 1984). Plaintiffs in Eyrich, Mr. And Mrs. Eyrich, had taken Jay-Jay, the son of their neighbor, with them to a circus performance. Eyrich, 193 N.J. Super at 247. During an animal performance, the young boy needed to use the restroom and was escorted out by plaintiffs' daughter. As they returned to their seats the children needed to walk close to the center ring. As they did so, one of the leopards performing in the ring leaped off its stool, "pounced on Jay-Jay, and dragged him under an empty transport cage." Id. at 249. Mr. Eyrich rushed to the ring and wrestled with the leopard in order to free Jay-Jay from its jaw-hold. Mr. Eyrich was able to free Jay-Jay from the leopard, suffering bruising himself, but the child ultimately bled to death. Both Mr. and Mrs. Eyrich brought claims to recover for the psychological harm they sustained after the incident.

Analyzing Mrs. Eyrich's claims under New Jersey emotional distress case law, the court found the harm she suffered as a bystander would not be compensable under Portee. The court

found Mrs. Eyrich did not meet all the prongs of the Portee test, specifically because she was not "bound to the child by intimate family ties." Eyrich, 193 N.J. Super. at 259. The Eyrich court ruled that Mr. Eyrich's claim did state a viable cause of action, but not as a bystander claim. Id. at 255 ("[W]e are persuaded that defendant's liability to Mr. Eyrich does not at all depend on his alleged bystander role."). The court noted that where one negligently creates a peril, the intervention of a rescuer is foreseeable and a tortfeasor may be liable to rescuer. Id. at 256 (citing Harrison v. Middlesex Water Co., 158 N.J. Super. 368, 376 (App. Div. 1978)). Defendants in Eyrich argued that Mr. Eyrich could not recover because his psychological harm was not caused by fear for his own safety as required by Falzone. The court, relying on Greenberg v. Stanley[3], held that:

> Once a plaintiff has been negligently placed within the area of physical risk and has actually sustained a physical impact, his cause of action for emotional distress is not limited to the psychological sequelae of fear for himself but rather comprehends all of the psychological sequelae which as a matter of reasonable foreseeability result from the episode as a whole.

Id. at 256-57. The Eyrich court determined that Mr. Eyrich had a viable claim both because he was subjected himself to physical risk, and because he was physically impacted by the leopard. Id. at 258.

Plaintiffs' rely heavily on Eyrich for the proposition that "rescuers," as a special category

---

[3] 51 N.J. Super. 90 (App. Div. 1958). Greenberg involved a claim of negligent infliction of emotional distress that was accompanied by physical impact to the plaintiff. Mrs. Greenberg was pushing her five-month-old daughter in a carriage when a vehicle negligently veered off the road and struck them both. The court found that Mrs. Greenberg's "entire physical and mental condition was directly attributable to the accident, that her disabilities constituted an integral situation in which the sudden, unexpected and sever physical trauma was inextricably intertwined with the emotional shock over the simultaneous fatal injury to the infant. . . ." 51 N.J. Super. at 105-06.

of plaintiffs, are entitled to damages for negligent infliction of emotional distress without meeting the requirements of Falzone or Portee. This Court disagrees with such an interpretation. Eyrich did not create a new negligent infliction of emotional distress cause of action, but rather analyzed under which existing theories Mr. Eyrich could recover. The court ultimately allowed Mr. Eyrich to recover not because he was classified as a "rescuer," but because he was (1) within the zone of danger and (2) suffered a physical impact. Eyrich, 193 N.J. Super. at 258. Finding that Mr. Eyrich met those longstanding requirements, the court went on to note that he was not limited to damages suffered in fear for his own safety under Falzone. Id. at 257. Falzone permits a plaintiff to recover damages for negligent infliction of emotional distress when he had been placed in fear for his own safety but suffered no physical impact. The Eyrich court held only that where a plaintiff is in fear for his own safety *and* suffers a physical impact his remedy is not limited to damages caused by fear for his own safety. Eyrich, 193 N.J. Super. at 257.

In the present case, Plaintiffs' argue that they, like Mr. Eyrich, are entitled to psychological damages. Plaintiff Taylor contends that he is entitled to damages under Eyrich because of his attempts to put out the fire and cut off the burning clothing of Mr. Kluge. (Pl. Taylor's Br. 9.) Plaintiff Taylor argues that he put himself in harms way by attempting to rescue Mr. Kluge and therefore, a material issue of fact exists as to whether he is entitled to recover under a "rescuer theory of liability". (Id.) Plaintiff McMunn argues that he had prolonged and intimate contact with the explosive material within minutes of the explosion, as well as physical contact with the burning victim. (Pl. McMunn Br. 7.) Such exposure, McMunn contends, qualifies as physical impact under Eyrich. (Id.)

Defendants argue, and this Court agrees, that Plaintiffs' interaction with Mr. Kluge did

10

not place them "in the area of physical risk" or cause them to sustain a sufficient physical impact which would allow them to recover under Eyrich. Both Plaintiffs have conceded that they were not in the building at the time of the explosion and that after they arrived on the scene, there were no further explosions. (McMunn Dep. 60:11-24-62; Taylor Dep. 22-24.) Both Plaintiffs also stated that once they arrived at the site of the explosion, neither of them were in fear for their own physical safety. Specifically, Plaintiff McMunn stated:

> Q: But after the explosion, there wasn't stuff going on, where you felt like, hey we need to move him out of this area.
> A: No.
> Q: Okay. So there were no dangers that you perceived.
> A: No, we know ourselves how to put fires, magnesium fires, and that's what we did. Whatever drums were around anywhere in the vicinity, we put out.

Similarly, Plaintiff Taylor stated:

> Q: Did you consider moving Mr. Kluge at all?
> A: No.
> Q: Did you feel like he was pretty safe, then, where he was as far as, like there was no risk of - -
> A: Another fire, no. No.

(Taylor Dep. 72:5-9.) By the time both Plaintiffs arrived on the scene, any dangers associated with the explosion had subsided and neither Plaintiff suffered any physical injuries as a result of the explosion. (Taylor Dep. 27:4-7; McMunn Dep. 66:6-8.) Accordingly, Defendants' motions for summary judgment will be granted.

### III. Conclusion

For the foregoing reasons, this Court will **GRANT** defendants' motions for summary judgment. An appropriate form of order will follow.

s/ Stanley R. Chesler  
Stanley R. Chesler, U.S.D.J

12